Good morning, and may it please the Court. My name is Nicholas Kampard, and I represent the plaintiff appellant in this case, Mr. Timothy Atkinson. There is evidence in the record before this Court that shows there are genuine issues of material fact that remain in this case, and Mr. Atkinson should be permitted to present his case to a jury. Let me ask you about that. The question I have is what not only is in this record, but what, more importantly, was before the district court? Well, that's what I'm interested in, because if it was not before the district court and probably not before the district court, then it wasn't in the record, right? Now, there's no issue, there's no problem that this man had a serious condition on the question of deliberate indifference. It's a conceded blindness is a serious condition. All right. And the cause of blindness is a serious condition. Now, on deliberate indifference, what's your evidence in the record with record citations that there was a tribal issue of fact on deliberate indifference as to Dr. Vargo? Well, specifically in defendant's response to, or plaintiff's, excuse me, appellant's response to defendant's motion for summary judgment, which is the excessive record at 25, there is evidence that Dr. Vargo issued a standing order that Mr. Atkinson would, or no offices were to send Mr. Atkinson to any medical staff for treatment of his eye condition, and that if Mr. Atkinson did indeed request such care, that he was to be placed in solitary confinement. When was that? That was, Your Honor, in March or in the spring of 2002 sometime. So we have these time problems about that, right? That's right. Go ahead. So how does that match up with the statute of limitations problem? Well, the statute of limitations, as the complaint was filed on May 24th, 2004, adopts Oregon's two-year statute of limitations, so that would extend back to conduct which occurred after May 24th, 2002. However, this conduct is a course of treatment that extended while Mr. Atkinson was in the care of Dr. Vargo and was during his first and second period of incarceration. But is there any indication at all that whatever order was given during one period of incarceration applied to a second period of incarceration? Well, because these periods of incarceration are so close, and he was under the same care of the same physician during both, this is a continuing course of treatment for the same serious medical need that Mr. Atkinson experienced. Also, when did he actually get blind in his right eye? Was it in the spring of 2002, or was it at the time he came back?  And so when he came back, I believe he was then said to have no vision. That's correct. In January of 2003, there is evidence in the record that he was blind in his right eye. Dr. Miller found that on, I think, May 26th, 2003, but there was also some indication that he had 2200 vision in 2002, right? I believe that was before this, his traumatic experience. Now, you say that ER-25 is in the record, right? What's the docket number for the declaration? Give me the docket number for ER-25. Your Honor, I apologize, but I don't know exactly the precise docket number. I know it is after 160, I believe, which was the defendant's motion for summary judgment. It was filed in February, early February of 2006. Was it part of the orders, I think, in January 2006, Judge Aiken struck? There's a whole bunch of orders of docket numbers that she struck. Was this one of them? I don't believe so. Go ahead. So the evidence that exists in the record, both on summary judgment and outside of the summary judgment record, which Judge Aiken was entitled to examine on defendant's motion for summary judgment, are not only that the standing order was issued, that Mr. Atkinson complained of pain in his right eye, and Dr. Vargo ordered that no pain medication was to be administered to Mr. Atkinson. When he collapsed and was taken to the hospital. Well, wait a minute. He was giving, that's not quite correct. Dr. Vargo said we should, he should continue the therapy which was ordered by Dr. Barone in March of 2002. Part of that was Vicodin. That's a pain medication. Right. But there is evidence at excerpt of Record 21, a document submitted by Mr. Atkinson that shows he requested, he filled out a kite, which is a request, and he requested or he stated in that kite that he was in extreme pain, and the nurse noted that Dr. Vargo refused pain medication at that time. But again, that was before May 24th, 2002.  That's correct. And the pain issue, as opposed to some medication that would have had an impact later, like the order, it seems to be time borrowed. Wouldn't it be time borrowed? Right. The conduct that extends into the statutory period, that's when he was first released from his first period of incarceration and then returned, that conduct should be attributable to his claim of medical indifference. A continuing violation under Title VII, an employee who experiences a hostile work environment, it is argued that every day that they experience that is not a distinct harm, but the culmination of that, the cumulative harm. But what does employment have to do with Title VII? This is an Eighth Amendment claim, right? That's correct. Let's not confuse by analogy. I'm not trying to confuse by analogy. I'd just like to bring to the Court's attention that there is authority. But you see how pain on day one continues into, you know, pain on day 30. Well, when a prisoner is under the care and stripped of his ability to go out and receive medical care on his own and he is provided this care, the defendants have an obligation or Dr. Vargo has an obligation to provide that care up through the... Well, he may. And the pre-statute of limitations behavior may be pertinent to Dr. Vargo's state of mind, to the question of whether he was deliberately indifferent later. But if he was just generally deliberately indifferent. But I don't see how it directly can be the basis of the action. So what is there that's post-May 24th, 2002, that is the basis of the cause of action? There is evidence in the record, although I don't believe it's the summary judgment record, that when Mr. Atkinson was released from his first period of incarceration, he did not receive a prescription medication from Dr. Vargo. And then when he returned, there was a delay in the issuance of prescription sunglasses to protect him from this, from the sunlight. But we're basically dealing with the sunglasses, which is what I thought, in terms of having a cause of action during the limitations period. That is the conduct, along with the statement by Mr. Dr. Vargo, that are you winning yet, which shows the subjective intent that is needed for a claim of deliberate indifference. And arguably, Mr. Atkinson, when the first conduct occurred, may not have known that it was a deliberate indifference claim. He didn't know that Dr. Vargo had that subjective intent. And that didn't become obvious until the second period of incarceration, when Dr. Vargo said to him, are you winning yet? And then delayed the prescription for the sunglasses. What does are you winning yet mean? It wasn't meaningful to me. I'm sorry? I wasn't, are you winning yet mean? I wasn't at all clear why that was a. Well, it shows that Dr. Vargo felt that Mr. Atkinson perhaps was trying to challenge him and that he was going to, I think this is implied in the statement, that he was going to win and that this was a battle. And that's the intent that's needed for a deliberate indifference claim, that there's a subjective intent to disregard a serious medical need of a prisoner. Have you developed at all in your argument, I saw it mentioned slightly in your brief, that the plaintiff here complained that he was allergic to prednisone type medication, that it was causing his infection. And that nothing was done about removing the prednisone treatment, even after Dr. Barone said, don't give it to him anymore. And that he learned for the first time, according to him, that the prednisone causes blindness when he talked to Dr. Miller in May of 2003. Are you relying on that series of events at all? I believe that conduct is, extends throughout the course of treatment. Right. And so that is just more evidence that shows that this should be, all this conduct should be considered as one continuing violation of Mr. Atkinson's Eighth Amendment rights. Your time has just run out. Thank you, Your Honor. Thank you very much. May it please the Court. If we're down to a comment that the plaintiff doesn't like, are you willing? Well, we're not. We're not. We are down to, it seems to me, first of all, we're down to the fact that this man did lose his sight while he was in prison. No dispute about that. And therefore, it's a matter of some concern. Go ahead. Go ahead. But the, it seems to me there are two queries that are worth pursuing. One of them is, is there a discovery argument that would survive summary judgment with regard to the period post-May 24th, 2002? Is there something that was discovered such as the impact of prednisone? And secondly, what about the prescription sunglasses, which seem to be of some importance? Well, and I, even if we're going to consider the drug issue, I think that that comes down to at most a disagreement between plaintiff and doctors over whether that drug should have been prescribed. Both Dr. Vargo and Dr. Miller, who was a specialist, said that's the treatment. That's the standard treatment. But Dr. Barone, at the KCI Institute, specifically removed prednisone. And it was removed. Well, there's an issue of factual as to whether it was removed. I don't think there's. Because. I don't think there actually is. Pardon me, counsel. Certainly. The plaintiff affides in ER 31 and 32, which are part of the record, that Vargo failed to follow the treatment and therapy prescribed by expert Barone at the KCI Institute. One element of that therapy was the removal of prednisone. If that statement is in the record, right, it creates a tribal issue of fact as to whether prednisone was indeed removed. Do you agree? Secondly, because, by the way, the declarations by Mr. Atkinson are full of conclusions. They lack personal knowledge. They go into medical issues, which he's probably not capable of testifying to. But they weren't objected to. There was no ruling knocking them out because of the grounds that I've indicated. So, therefore, they're in the record. Now, if you say that there is a tribal issue of fact, that prednisone was continued after Dr. Barone said don't continue it, and if you say that Dr. Vargo knew that Barone had withdrawn the treatment, then plaintiff also puts in an affidavit, ER-45, saying that the administration of prednisone was what caused the aggravated infection in his eye, and he first learned of that, discovered that, when it was seen by Dr. Miller, 5-2903, within the statute of limitations. I don't believe that ER-45 is part of the summary judgment.  It was stricken by Judge Atkins' order in January of 2006 as an improper discovery request, which comes as a great surprise to me because it wasn't part of a discovery motion. Well, the judge was just being flooded with motions. There were 45. So if she was being flooded with motions, she probably made a mistake, which we can correct. But the appellant has not asked you to correct that mistake. Well, he's appealed from the judgment as a whole, and we have case law that says when you appeal as a judgment as a whole, you appeal subsidiary orders which result in the judgment. So don't go down that long. Well, but I think it's fair to look at this from the district court judge's point of view. After the filing of the summary judgment motion, she gets 46 submissions from the plaintiff with all kinds of very imaginative titles, and most of which the imp work is rather mysterious and unclear. The judge would have, and I think it was something like 96 pro se filings total. Was there an objection to each one of them on the ground stated by the defense? No, because the defendant was trying to move ahead and get summary judgment and stop the flood, in essence. All right. Go ahead. What do you mean when you say it wasn't in the summary judgment motion? You mean that it wasn't attached to the summary judgment motion? It wasn't part of the summary judgment filings. Meaning it wasn't attached to the summary judgment? It wasn't part of anything that had to do with summary judgment, and I'm going to have to quickly get to that. I'm trying to find out what you mean by that. It was in the record, and there was a summary judgment motion. It was part of what is called new evidence. That's the title of the document, new evidence. But it was before the summary judgment hearing, correct? Yes. Yes. Correct. And it was stricken by the court, by the court's order of 31 January 2006, docket number 111, right? Yes. But it was stricken on the basis of being a discovery order. She cited Federal Rules of Serial Procedure 26 through 37, which is plain discovery. This wasn't discovery. He was putting in evidence. He wasn't trying to get evidence. No. So I think she, you know, she went off the track there. She just made a mistake. The kind of mistake we can review. That's certainly possible, Your Honor. Again, I think to give the district court judge her due, she was really being literally inundated. I've practiced law for a long time. I don't think I've ever seen this volume of material in this much time from a litigant. Why don't you address Judge Berzon's question about eyeglasses? That, I think, admittedly, is, to my mind, one of the troubling parts of this case, because I think, candidly, there appears to be a material issue of fact there. Given this man's condition, what might seem a trivial request in other circumstances is not one. And although I feel with considerable fervor that the defendant would ultimately prevail if this issue were tried, because I think the sunglasses were provided, I think on the record we have a flat disagreement between plaintiff and defendant on that point of whether they were or were not provided. Or when as well. Right. Whether and when. Whether and when. A delay. Yes. And I think that's simply true. All right. With that, I'd be happy to answer any additional questions. I don't have any more. Thank you very much. Thank you. Counsel? Thank you. Thank you very much. Thank you for the presentation. Thank you, counsel. The case of Atkinson v. Vargo is submitted. Are counsel and I here for the first case? Are all counsel here for the first case? Apparently we're not before. If someone could answer that question, it would be useful. I'm sorry? He hasn't. Okay. Why don't we go forward then? Has there been ‑‑ have you checked on that? Okay. Well, why don't we go to the next case and then we can check after that. Oh, okay. Why don't we proceed to Head v. Northwest and then circle back. And I should also mention with regard to the counsel in green that the time allotted for this case is probably short, and I will allow you to go longer than that. So don't be too shy about continuing to talk. Now on Head v. Glacier Northwest.
judges: Berzon, Bea, Gutierrez